**COWLITZ INDIAN TRIBE; Friends of the Cowlitz; and CPR–Fish, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION; National Marine Fisheries Service; United States Fish & Wildlife Service; and United States Army Corps of Engineers, Respondents.**

Cowlitz Indian Tribe; Friends of the Cowlitz; and CPR–Fish, Petitioners,

v.

Federal Energy Regulatory Commission, Respondent.

Nos. 03–73225, 05–70391.

FERC Project Nos. 2016–044, 2016–071.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 2006.

Decided July 27, 2006.

Jonathan I. Feil, Esq., Simburg, Ketter, Sheppard & Purdy, Seattle, WA, for Petitioners.

Robert H. Solomon, Deputy Solicitor, Judith A. Albert, Federal Energy Regulatory Commission, David C. Shilton, Esq., U.S. Department of Justice, Washington, DC, Dennis Lane, Solicitor, Brian M. Brown, for Respondents.

Before THOMPSON, TASHIMA, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

The Cowlitz Indian Tribe, Friends of the Cowlitz, and CPR–Fish (collectively "Petitioners") petition for review of two orders of the Federal Energy Regulatory Commission (the "Commission") in this consolidated appeal. The first petition for review, No. 03–73225, challenges the Commission's order that issued a license for the continued operation of a hydroelectric project on the Cowlitz River in Washington, which is operated by the City of Tacoma ("Tacoma"). The second petition for review, No. 05–70391, challenges the Commission's order that amended the license in light of a Biological Opinion ("BiOp") submitted by the National Marine Fisheries Service ("NMFS"). Petitioners contend that the Commission: (1) failed to perform its statutory obligation to consider Tacoma's record of compliance with the existing license in the relicensing process; (2) reached conclusions regarding downstream and upstream fish passage, hatchery management, and flood control that were arbitrary, capricious, and unsupported by substantial evidence; and (3) approved of an advisory committee as part of the new license in violation of the Federal Advisory Committee Act ("FACA"). Because the parties are familiar with the

*This disposition is not appropriate for publication and may not be cited to or by the courts

facts, we do not recite them in detail. We deny the petitions.

## DISCUSSION

We have jurisdiction under the Federal Power Act ("FPA") to review final orders of the Commission. 16 U.S.C. § 825*l* (b); *see Friends of the Cowlitz v. FERC*, 253 F.3d 1161, 1165 (9th Cir.2001), *as amended by* 282 F.3d 609 (9th Cir.2002). Commission actions may be set aside if they are arbitrary and capricious, meaning that "the agency did not engage in reasoned decision-making." *Id.* at 1166. The Commission's statutory interpretation of the FPA is reviewed using the familiar two-part framework set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Am. Rivers v. FERC*, 201 F.3d 1186, 1194 (9th Cir.1999).

## I. Consideration of Tacoma's Record of Compliance

▉ Petitioners contend that the Commission failed to meet its statutory obligation under FPA § 15(a)(3), 16 U.S.C. § 808(a)(3), to consider Tacoma's record of compliance with the existing license in the relicensing process. Specifically, Petitioners argue that the Commission had a duty to investigate their allegations that Tacoma failed to comply with its original license, a claim they brought unsuccessfully before this court. *See Friends of the Cowlitz*, 253 F.3d at 1163–64. Section 15(a)(3) states that in a relicensing process, the Commission shall take into consideration the "existing licensee's *record of compliance* with the terms and conditions of the existing license." 16 U.S.C. § 808(a)(3)(A) (emphasis added). The plain text of the provision demonstrates

of this circuit except as provided by 9th Cir. R. 36–3.

that Congress intended only that the Commission be required to consult existing documentary evidence of license compliance, rather than having to initiate new investigations. *See Am. Rivers,* 201 F.3d at 1194 (holding that only the first step of the *Chevron* inquiry is necessary if the intent of Congress is clear); *id.* at 1196 ("construction of the FPA commences, as it must, with the statute's text"); BLACK'S LAW DICTIONARY 1301 (8th ed.2004) (defining "record" first as a "documentary account of past events usually designed to memorialize those events"); *see also Friends of the Cowlitz,* 253 F.3d at 1172 (holding that under 16 U.S.C. § 825f(a), "investigative decisions are firmly committed to the [Commission's] discretion"). Because the Commission thoroughly reviewed the existing record measuring Tacoma's compliance with its original license, and reasonably declined to exercise its discretion to initiate further investigation, it complied with the requirement in FPA § 15(a)(3).

## II. Downstream Passage Provisions

 Petitioners argue that NMFS' conclusions that approved of the downstream fish passage provisions in the new license are arbitrary and capricious because the achievement of 75–95 percent fish passage survival ("FPS") rates is speculative. NMFS, however, properly relied on the license agreement, which imposes enforceable obligations, to assure that "proposed mitigation measures will actually be implemented." *See Selkirk Conservation Alliance v. Forsgren,* 336 F.3d 944, 956 (9th Cir.2003). In addition, NMFS reasonably concluded that success was expected to

occur, and Petitioners do not contend that NMFS failed to utilize the best scientific data available to reach this conclusion. *See* 16 U.S.C. § 1536(a)(2). Therefore, while Petitioners may have reached different conclusions, the BiOp's conclusions were reasonably based on the best evidence, and thus not arbitrary and capricious. *See Greenpeace Action v. Franklin,* 14 F.3d 1324, 1337 (9th Cir.1992) (holding that even though a conclusion may be uncertain because of weak evidence, it is not arbitrary and capricious if the agency "based its decision on the best available scientific data and had grounded its decision in a consideration of the relevant factors").[1]

## III. Upstream Passage Provisions

 Petitioners argue that the upstream fish passage provisions in the license are arbitrary and capricious because the use of volitional upstream passages at Mayfield Dam is currently feasible, they are the best available means for aiding upstream passage, and there is no logic in delaying their usage until trap-and-haul methods have achieved some degree of success. NMFS' conclusions regarding the upstream fish passage provisions were not arbitrary and capricious because there was ample evidence to show that trap-and-haul methods were sufficient to avoid jeopardy of listed species, and NMFS is not "required to pick the best alternative or the one that would most effectively protect" species from jeopardy. *See Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,* 143 F.3d 515, 523 (9th Cir. 1998).[2] With regard to these provisions,

1. Petitioners also briefly argue that the 75 percent FPS rate threshold is too low adequately to sustain fish populations, and that NMFS had no basis for approving this figure. NMFS, however, used a modeling technique to conclude that a 75 percent FPS rate was

sufficient for fish population sustainability. Absent any evidence to the contrary, this conclusion was not arbitrary or capricious.

2. Petitioners also contend that the recovery criteria, which determine when to switch

the Commission also fulfilled its duty to take into account "to the fullest extent possible" the 1994 Columbia River Basin Fish and Wildlife Program ("Program"),[3] see 16 U.S.C. § 839b(h)(11)(A)(ii), as its Final Environmental Impact Statement ("FEIS") sets forth substantial reasons for adopting the license's scheme and rejecting the immediate use of volitional passages at Mayfield Dam.

### IV. Hatchery Management Provisions

■ Petitioners argue that the approval of the hatchery management provisions in the license violated the Commission's duty to take into account "to the fullest extent possible" the Program, which requires that licensees provide "[f]ull compensation for unavoidable fish losses or fish habitat losses through habitat restoration or replacement, appropriate propagation, or similar measures." See id. Because Petitioners did not raise this claim in their request for rehearing before the Commission, we do not have jurisdiction over the claim. See High Country Res. v. FERC, 255 F.3d 741, 745–46 (9th Cir.2001).

### V. Flood Control Provision

■ Petitioners contend that the flood control provision in the approved license, Article 303, was unlawfully adopted because the Commission did not have substantial evidence for its conclusion that the provision would provide adequate flood protection. In particular, Petitioners argue that the Commission relied only on conclusory assertions by the Army Corps

of Engineers, and sidestepped two issues presented by Petitioners. The record shows that instead of merely relying on assertions of the Army Corps, the Commission had Tacoma conduct a computerized flood flow analysis, which demonstrated the efficacy of Article 303. In addition, the Commission in its FEIS specifically considered the historical data on flooding covering the period from 1969–1997, and also specifically addressed the Army Corps' report on sediment abatement efforts following the eruption of Mount St. Helens in 1980. Therefore, the Commission had substantial evidence for its conclusion that Article 303 provided adequate flood protection.

### VI. Whether the Advisory Committee Falls Under FACA

■ Petitioners' final claim is that the Commission's approval of several license provisions, which require Tacoma to consult with a new Fisheries Technical Committee, violates FACA. FACA applies exclusively to "advisory committees," 5 U.S.C.App. 2 § 4, which are defined, in relevant part, as being "established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government." 5 U.S.C.App. 2 § 3(2). The record shows that the Committee's purpose is not to provide advice or recommendations to the Commission, or to other federal agencies; its purpose is to provide advice and recommendations to Tacoma. Therefore, FACA

---

from trap-and-haul methods to volitional fish passages, expose listed species to additional risk, and thereby violate the Endangered Species Act. Because the trap-and-haul methods are themselves sufficient to avoid jeopardy of listed species, the alleged defects in the criteria used to trigger the change to volitional

upstream passages would have no bearing on the validity of NMFS' no-jeopardy conclusion. See Sw. Ctr., 143 F.3d at 523.

**3.** The Program requires that licensees use the "best available means for aiding downstream and upstream passage" of fish.

is inapplicable to the Committee. *See 5 U.S.C.App. 2 § 3(2); see also Sofamor Danek Group, Inc. v. Gaus*, 61 F.3d 929, 933–34 (D.C.Cir.1995) (holding that the Low Back Panel was created to provide advice to private health care practitioners, and not to the federal government, and therefore not subject to FACA).

## CONCLUSION

Because all of Petitioners' contentions are without merit, the petitions for review are **DENIED**.